Date: 12/23/2002

X☐ If this box is checked, this is a simple interest contract with a "Balloon Payment" as the last scheduled payment. If this box is not checked, this is a simple interest contract WITHOUT a "Balloon Payment" as the last scheduled payment.

| Buyer (and Co-Buyer) Name and Address (Include County and Zip Code) | Creditor – Seller Name and Business Address |
|---|---|
| PAUL A. MEEGAN<br>11 WINDEMERE LN<br>S BARRINGTON IL 60010<br>COUNTY: | PORSCHE EXCHANGE SEMERSKY ENT., INC<br>2300 SKOKIE VALLEY ROAD<br>HIGHLAND PARK, IL 60035 |

WHO IS BOUND: You, the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. By signing below, you choose to buy the vehicle on credit under the terms on the front and back of this Contract and are individually liable for any amount due. In this Contract, "we," "us," and "our" mean the creditor named above and, after assignment, the creditor's assignee, Chase Manhattan Bank USA, N.A. and/or any other assignee.

DESCRIPTION OF VEHICLE: You agree to buy and we agree to sell the following vehicle:

| New, Used or Demo | Year | Weight (lbs.) | Make and Model | Body Type | Vehicle Identification No. | Key No. | Primary Use for Which Purchased |
|---|---|---|---|---|---|---|---|
| NEW | 2003 | | PORSCHE 911 | CP | WP0AB29953S696097 | | X personal<br>— business<br>— agricultural |

If truck – Describe body, gross vehicle weight and major items of equipment sold:

NOTICE TO BUYERS OF USED OR DEMONSTRATION VEHICLES: The information you see on the window form for this vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the contract of sale.

FEDERAL TRUTH-IN-LENDING DISCLOSURES.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS | TOTAL SALE PRICE |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit, including your downpayment of $25000.00 |
| 8.29 % | $ 40200.70 | $187213.90 | $227414.60 | $252414.60 |

PAYMENT SCHEDULE: Your payment schedule will be N/A monthly payments of $ N/A each, due on the same day of each month starting on N/A

BALLOON PAYMENT: If this Contract is checked with "Balloon Payment" above, your payment schedule will be 35 monthly payments of $ 2642.66 each, due on the same day of each month starting on 22ND JAN. 2003, and then your last payment will be $ 134925.00, due on 12/22/2005

PREPAYMENT: You have the right to pay off this Contract early. If you do so, you will not have to pay a penalty.

SECURITY: You are giving us a security interest in the motor vehicle being purchased.

LATE FEE: If any portion of a payment is more than 10 days late, you will pay us $10.

OTHER TERMS: Please read this Contract, including the reverse side, for additional information on security interests, nonpayment, default, and our right to require repayment in full before the scheduled maturity date.

ITEMIZATION OF THE AMOUNT FINANCED

1. Cash Price
   - A. Cash Price of Vehicle (including any accessories and installation of accessories) $194775.00
   - B. Sales Tax (including State and any applicable City or County Sales Tax) $ 12663.66
   - C. Service Contract Charge $ N/A **
   - D. Total Cash Price (A + B + C) $207438.66
2. Downpayment
   - A. Net Trade-in $ N/A
     Your Trade-in is a N/A (Year) (Make) (Model)
   - B. Cash Downpayment $ 25000.00
   - C. Total Downpayment (A + B) $25000.00
3. Unpaid Balance of Cash Price (1 - 2C) $182438.66
4. Other Charges Including Amounts Paid to Others on Your Behalf:
   - A. Cost of Optional Credit Insurance for the Term (s) Specified in the "Credit Insurance" Paragraph of this Contract Paid to the Insurance Company (s) Named Below:
     Life $ N/A Disability, Accident and Health $ N/A $ N/A **
   - B. Official Fees Paid to Government Agencies: $ N/A
   - C. Government License and/or Registration Fees (Itemize): $ 15.00
   - D. Government Certificate of Title Fees: $ 65.00
   - E. Federal Excise Luxury Tax $ 4644.76
   - F. Other Charges (Describe who will receive payment and purpose) $ N/A
     To [illegible] For Documentary Fee $ 50.48 **
     (See Gap Pa. on back) To ________ For Optional Gap Coverage $ N/A **
     $ 4775.24
   - G. Total Other Charges and Amounts Paid to Others on Your Behalf (A + B + C + D + E + F) $ 4775.24
5. Amount Financed (Unpaid Balance) (3 + 4G) $ 187213.90

**We may retain, or receive, a portion of these amounts.

I request Gap coverage. Buyer's and Co-Buyer's Initials X X

PROMISE TO PAY: You promise to pay us the Amount Financed shown above, plus a Finance Charge determined by applying a daily rate of 1/365th of the Annual Percentage Rate shown above to the unpaid balance of the Amount Financed each day.

PAYMENTS BEFORE OR AFTER DUE DATE: This is a simple interest contract. This means that the amount of the Finance Charge shown above may vary depending upon when your payments are received. If no late charge is owed, we credit each payment first to accrued Finance Charge and then to the unpaid balance of the Amount Financed. If a late charge is owed, we credit each payment first to accrued Finance Charge, then to the scheduled unpaid balance of the Amount Financed, then to unpaid late charge owed, and then to the unpaid balance of the Amount Financed. We compute your Finance Charge each day on the unpaid balance of the Amount Financed. The earlier you make payments before their due dates, the less Finance Charge you will owe. The later you make payments after they are due, including payments due because we allow you to extend the term of this Contract, the greater the Finance Charge. We will send you a check for any amount owed you (if it is $1.00 or more) after you make your last payment; we will advise you of any additional amount owed (if it is $1.00 or more).

BALLOON PAYMENT: IF THIS CONTRACT IS CHECKED WITH "BALLOON PAYMENT" ABOVE, THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS. THE LAST SCHEDULED PAYMENT IS SUBSTANTIALLY LARGER THAN EACH OF THE OTHER SCHEDULED PAYMENTS. The due date and amount of this last scheduled payment are shown above. That amount may be less than what we estimate the vehicle will be worth at the time such payment is due. The provisions of the paragraph appearing on the reverse entitled "LAST PAYMENT OPTIONS" apply. The odometer reading referred to in Section (B)(3) of such paragraph is 30000 miles and the excess mileage charge referred to in section (B)(3) of such paragraph is 0.30 per mile.

LOCATION OF VEHICLE: The vehicle will be kept at the above address of the Buyer, unless another address is listed:

(Street and Town)

DOCUMENTARY FEE: A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 1992, WAS $40. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $40 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

CREDIT INSURANCE: Credit life and credit disability, accident and health insurance are not required to obtain credit and will not be provided under this Contract unless you sign for them and agree to pay the additional cost. The policies or certificates issued by the insurer will describe the terms and conditions in further detail.

If you want the following insurance, sign below:

☐ Life (☐ Buyer ☐ Co-Buyer ☐ Both) at a premium of $ N/A for a term of N/A

☐ Disability, Accident and Health (Buyer Only) at a premium of $ N/A for a term of N/A

The name of the insurer is ________ (Name) at ________ (Home Office Address)

X ________ Date X ________ Date
Buyer's Signature Co-Buyer's Signature

NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM

(1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY.

(2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

NOTICE: LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.

PROPERTY INSURANCE: Insurance coverage for loss or damage to the vehicle (collision, fire and theft) is required and you have the option of furnishing the required insurance either through your existing policies or you may purchase equivalent insurance coverage through anyone you wish acceptable to the Seller. If you elect to purchase this coverage through the Seller, it will be furnished by ________ for the initial term of ________ at a premium of N/A, but such charge is not included in this Contract.

IMPORTANT: READ THE ADDITIONAL TERMS ON REVERSE SIDE BEFORE SIGNING BELOW.

BY SIGNING THIS CONTRACT, YOU ACKNOWLEDGE THAT IT CONTAINS AN "AGREEMENT TO ARBITRATE DISPUTES" ON THE REVERSE SIDE, THAT YOU HAVE READ IT AND AGREE TO ITS TERMS.

ACKNOWLEDGEMENT: You acknowledge that you have read both sides of this Agreement, agreed to all terms, and received a completed copy of it signed by Seller.

NOTICE TO THE BUYER: (1) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (2) YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN. (3) UNDER THE LAW YOU HAVE THE RIGHT, AMONG OTHERS, TO PAY IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN UNDER CERTAIN CONDITIONS A PARTIAL REFUND OF THE FINANCE CHARGE.

RETAIL INSTALLMENT CONTRACT

Buyer's Signature [signature] Co-Buyer's Signature

Creditor - Seller's Signature

By signing below, the Creditor-Seller accepts this Contract and also agrees to the terms of the Seller's Assignment on the reverse side.

PORSCHE EXCHANGE SEMERSKY ENT.

By [signature]

FORM NO. CMB-ILLINOIS-2000 REV. 2/01 Pg. 7/01
COPYRIGHT © 2001 CHASE MANHATTAN BANK USA N.A. All Rights Reserved.

CHASE COPY

EXHIBIT A

(A) If you wish to "refinance" your last [illegible] Contract (including [illegible] Finance Charge) as of the due date of your last scheduled [illegible] payment at equally favorable terms. This means that finance charges will continue to accrue at the [illegible] Percentage Rate [illegible] and you will continue to make your regular monthly payments until you pay the amounts you owe [illegible] Contract in full. We will require that you sign a new agreement setting forth the terms of the refinanced obligation. (B) If you want to sell the [illegible] to us instead of making the last scheduled payment, you must first give us written notice that you would like to do so at least 30 days before the last scheduled payment is due. You must then deliver the vehicle to us within five days before the last scheduled payment is due, at a place designated by us. At the same time, you must give up the title to the vehicle, which shows no other liens other than our lien, and all other papers we need signed by you in order to transfer ownership of the vehicle. You must also meet each of the following conditions (numbered 1 through 4) by the date the last scheduled payment is due in order for us to accept the vehicle in satisfaction of the last scheduled payment. (1) You must pay us a disposition fee of $800. (2) You must pay us all amounts you owe under this Contract (including the earned Finance Charge) as of the due date of your last scheduled payment (but not including the amount of your last scheduled payment). (3) If, when you deliver the vehicle to us, the vehicle's odometer reads greater than the allowed mileage stated in the paragraph entitled "Balloon Payment" on the front of this Contract, you must pay us the amount stated in that paragraph for each such excess mile over the allowed mileage. (4) If the vehicle is not in "good running order and condition" when you deliver it to us, you must pay us the amount it costs us or would cost us to put the vehicle in good running order and condition. In order to be in "good running order and condition," the vehicle must have, among other things, no less than four matching tires of equal quality to the originals, plus a spare of equal quality or of the type originally provided by the manufacturer of the vehicle, with each tire having at least one-eighth inch of remaining tread at its shallowest point, and no scratches, chips, cracks, or other damages in the glass, body, or interior beyond normal wear and tear.

If you disagree with the amount we determine is necessary to restore the vehicle to "good running order and condition," you may obtain, at your expense, and within 10 days of our determination, a written estimate of such amount from an independent appraiser acceptable to us. If you do so, the amount you must pay us will be the lesser of (a) the charge determined by us to restore the vehicle to "good running order and condition," or (b) the charge determined by the appraiser to restore the vehicle to "good running order and condition." If you deliver the vehicle to us in satisfaction of the last scheduled payment, and meet each of the above conditions, we will then have the entire risk of loss or benefit of gain if and when we dispose of the vehicle.

**OWNERSHIP AND RISK OF LOSS:** You agree to pay us all you owe under this Contract even if the vehicle is damaged, destroyed or missing. You agree not to sell, transfer, or remove the vehicle from the United States for more than thirty (30) days without our written permission. You agree not to expose the vehicle to misuse or confiscation. You agree not to rent the vehicle to others or to carry passengers for hire. If we pay any repair bills, storage bills, taxes, fines, or other charges on the vehicle, you agree to repay the amount when we ask for it. You will immediately notify us of any change in your address or the address where the vehicle is regularly located.

**SECURITY INTEREST:** You are giving us a security interest in the vehicle being purchased, any proceeds of the vehicle, and any accessories, equipment and replacement parts installed in the vehicle. The security interest also covers: (1) insurance premiums returned to us; (2) proceeds of insurance policies on the vehicle, and (3) proceeds of any insurance policies on your life or health which are financed in this Contract. These secure payment of all amounts you owe in this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures your other agreements in this Contract. For purposes of this Contract, we agree to forego any security interest you may have given under another agreement which secures your obligation under this Contract. You will [illegible] or cooperate in causing our security interest (lien) on the vehicle to be shown on the title. You will not allow any subordinate or other liens to be placed on the vehicle.

**REQUIRED PHYSICAL DAMAGE INSURANCE:** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this Contract. You will make us loss payee and provide evidence of insurance. At any time during the term of this Contract, if you do not have physical damage insurance which covers both your and our interests in the vehicle, then we may buy it for you. If we do not buy physical damage insurance which covers both interests in the vehicle, we may, if we decide, buy insurance which covers only our interest, as permitted by applicable law.

We are under no obligation to buy any insurance, but may do so if we desire. If we buy either of these coverages, we will let you know what type it is and the charge you must pay. You agree to pay the charge on demand or in equal installments along with the payments shown on the payment schedule, at our option.

If the vehicle is lost or damaged, you agree that we can use any insurance settlement either to repair the vehicle or to apply to your debt.

**OPTIONAL GUARANTEED AUTO PROTECTION (GAP) COVERAGE:** Gap coverage is not required to obtain credit and you may purchase it from any company you want which is authorized to sell such coverage and is acceptable to the Seller. If you elect to purchase Gap coverage under this Contract, it will be furnished by the Gap company and at the cost stated in Paragraph 4F of the Itemization of the Amount Financed located on the reverse side of this Contract. The contract issued by the Gap company will describe the terms and conditions of this coverage. To purchase Gap coverage under this Contract initial the space provided in Paragraph 4F of the Itemization of the Amount Financed located on the reverse side of this Contract. This coverage will not be provided if you do not initial in the appropriate space provided.

**INSURANCE CHARGES RETURNED TO US:** If any charge for required insurance is returned to us, it may be credited to your account or used to buy similar insurance or insurance which covers only our interest in the vehicle. Any refund on optional insurance obtained by us will be credited to your account or returned to you. If insurance charges refunded to us are credited to your account, they will be applied to as many of your installments as they will cover, beginning with the final installment.

**DEFAULT:** You are in default if: (1) you fail to pay any payment within 10 days of its due date, (2) you break any of the agreements in this Contract (3) you die, become incompetent, or cannot pay your debts as they become due, (4) any person tries to take any of your property by legal proceedings while it is in your possession or control, (5) you made materially false statements in applying for this Contract, or (6) bankruptcy or insolvency proceedings are initiated by or against you.

**REPOSSESSION OF THE VEHICLE:** If you are in default, we may repossess the vehicle and sell the vehicle at public or private sale (subject to your rights, if any to cure the default, receive notice of the sale, and redeem the vehicle prior to sale). Repossession means our taking the vehicle from you, including the taking and/or retaining possession of the keys to your vehicle (or copies thereof). To take the vehicle we can enter your property, or the property where it is stored, so long as it is done peacefully. If there is any personal property in the vehicle, such as clothing, we can store it for you. Any accessories, equipment or replacement parts will remain with the vehicle.

**GETTING THE VEHICLE BACK AFTER REPOSSESSION:** If we repossess the vehicle and you have paid an amount equal to 30% or more of the "deferred payment price" at the time of repossession, you may get the vehicle back (redeem) by tendering within 15 days (a) the total of all unpaid amounts, including any unpaid late fees or deferral charges due at the time of tender, without acceleration, and (b) performance necessary to cure any default other than nonpayment of the amounts due, and (c) any reasonable cost of fees incurred by us in repossessing the vehicle. Tender of payment and performance in this manner restores your rights under this Contract as though no default had occurred. You have a right to redeem the vehicle in this manner only once.

The "deferred payment price" is equal to the total of (1) the cash sale price of the vehicle, (2) all other charges individually itemized which are included in the amount financed but which are not a part of the finance charge, and (3) the finance charge.

If the 15 day period has expired or you have paid less than 30% of the deferred payment price at the time of repossession, you may still have the right to redeem the vehicle if you receive a notice from us and you pay all amounts you owe according to such notice.

**VOLUNTARY SURRENDER OF THE VEHICLE UPON DEFAULT:** If you have paid an amount equal to 60% or more of the "deferred payment price" (see paragraph above) at the time of your default under this Contract and you, at our request and without legal proceedings, surrender the vehicle to us in ordinary condition and free from malicious damage, we must, within a period of 5 days from the date of receipt of the vehicle at our place of business, elect either to (a) keep the vehicle and release you from further obligation under this Contract, or (b) return the vehicle to you at our expense and be limited to an action to recover the balance of what you owe under this Contract.

**SALE OF THE REPOSSESSED VEHICLE:** We will send you a written notice of sale at least 15 days before selling the vehicle. If you do not redeem the vehicle by the date on the notice, we can sell it. We will use the net proceeds of the sale to pay all or part of your debt.

The net proceeds of sale will be figured this way: Any charges for taking, storing, cleaning, advertising and selling the vehicle, any attorney's reasonable fees, any court costs and any other charges permitted by law will be subtracted from the selling price.

If you owe us less than the net proceeds of sale, the difference is owed you, unless someone else has an interest in the vehicle. For example, we may be required to pay a lender who has given you a loan and also taken a security interest in the vehicle.

If you owe more than the net proceeds of sale, to the extent allowed by law you will pay us the difference between the net proceeds of sale and what you owe when we ask for it. If you do not pay this amount when asked, you may also be charged interest at the highest lawful rate, not to exceed the Annual Percentage Rate applicable to this Contract, until you do pay all you owe to us.

**COLLECTION COSTS:** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fees, and any court costs.

**DELAY IN ENFORCING RIGHTS AND CHANGES OF THIS CONTRACT:** We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, we can extend the time for making some payments without extending others. Any change in terms of this Contract must be in writing and signed by us. No oral changes are binding. If any provision of this Contract conflicts with applicable law, it will be considered modified to comply with that law and the remaining provisions shall continue.

**WARRANTIES SELLER DISCLAIMS:** You understand that the Seller is not offering any express warranties unless the Seller extends a written warranty. This provision does not affect any warranties covering the vehicle which may be provided by the vehicle manufacturer.

**RIGHT TO OFFSET:** To the extent provided by operation of law, if you are in default, we can upon written notice to you and subject to your right to cure the default, pay all or part of the amounts owed under this Contract from any deposits or funds that you have with us without telling you ahead of time.

**RIGHT TO RECEIPT:** If you make your payments under this Contract by mail, you must supply a self addressed stamped envelope to us if you request a receipt for your payment.

**CREDIT REPORTING:** You agree that we may obtain a consumer credit report periodically from consumer reporting agencies (credit bureaus) in connection with your application and any update, renewal, refinancing, modification or extension of this Contract. You also agree that we or any affiliate of ours may obtain one or more consumer credit reports on you, from time to time, for any purpose whatsoever. If you ask, you will be told whether a credit report was requested, and if so, the name and address of any credit bureau from which we or our affiliate obtained your credit report. You agree that we may also verify your employment, pay, assets and debts, and that anyone receiving a copy of this is authorized to give us such information. We may share account and credit information, including information on credit reports, with Chase affiliates for the purpose of marketing to you and considering your eligibility for their products and services, including banking, insurance and investment products. Additional information regarding Chase's rights to share information about you will be provided to you after an account is established.

**GOVERNING LAW:** This Contract is governed by the law of the State of Illinois.

Residents of Illinois may contact the Illinois Commissioner of Banks and Trust Companies at 1-800-634-6482 for comparative information on finance charges, fees and grace periods.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this Contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this Contract.**

**AGREEMENT TO ARBITRATE DISPUTES**

A "Dispute" means any controversy or claim (other than a claim relating to our right to repossess the vehicle by self help, if permitted, or by judicial process) arising from or relating to this Contract. The term Dispute includes, but is not limited to, the negotiation or breach of this Contract, or any aspect of the sale of the vehicle involving any Buyer, Co-Buyer, Seller or assignee, agent, employee, surety bonding company or insurer of any of these persons. The term Dispute also includes all tort, common law, constitutional, statutory and equitable claims arising from the transaction to which this Contract relates or arising from our enforcement of this Contract and any question regarding whether a matter is subject to arbitration under this Contract to Arbitrate Disputes. Dispute does not include any matter as to which arbitration is prohibited by the federal Magnuson-Moss Warranty Act. If any Dispute arises, either you or we may choose to have the Dispute resolved by binding arbitration under the rules then in effect of the National Arbitration Forum ("NAF"). Such rules may be obtained from the NAF at Box 50191, Minneapolis, MN 55405, or by calling NAF at 800-474-2371, or by visiting NAF's web site at www.arb-forum.com. The election to arbitrate may be made even if an action has been filed in court, so long as no judgment has been rendered. The arbitration hearing shall be before a single arbitrator, and shall be held at a location near where you signed this Contract (or, if you have moved since you signed this Contract, at a place in the federal judicial district of your residence), on 30 days' notice to the parties unless NAF rules provide a different notice period. The arbitrator shall apply the law that applies to this Contract. All statute of limitations that would be applicable in a court proceeding will be applicable to an arbitration proceeding. The hearing shall be concluded within 20 days unless otherwise ordered by the arbitrator. The award shall be made within 30 days after the close of the submission of evidence. An award by the arbitrator shall be final and binding on all parties to the proceeding. At your request, we will advance the first $125 of the filing and hearing fees for any Dispute which you may file against us. Otherwise, each party shall pay its own arbitration costs and expenses, including attorneys' fees, except that the arbitrator may award attorney fees, filing and hearing fees if applicable law permits. Either party in the highest local, state or federal court or before any administrative body may enter judgment on the award. This Agreement to Arbitrate Disputes shall, with respect to such Dispute, survive the termination or expiration of this Contract. Nothing in this Agreement to Arbitrate Disputes or in this Contract shall be deemed to give the arbitrator any authority, power or right to alter, change, amend, modify, add to or subtract from the provisions of this Contract. No class action arbitration may be ordered under this Agreement to Arbitrate Disputes and there shall be no joinder of parties, except for joinder of parties to this Contract. In the event that you have signed more than one arbitration agreement in connection with this Contract, you agree that this Agreement to Arbitrate Disputes shall take precedence over any such other arbitration agreement. The parties agree that the transaction relating to this Contract involve interstate commerce and that this Agreement to Arbitrate Disputes shall be subject to and governed by the Federal Arbitration Act, 9 U.S.C. Section 1-10, as amended. If either party chooses to have a Dispute resolved by binding arbitration, you and we understand and agree that both you and us are giving up the rights to seek remedies in court, including the right to a jury trial, both of our abilities to compel other parties to produce documents or to be examined is more limited in arbitration than in a lawsuit; and, both of our rights to appeal or change an arbitration award in court are very limited.