IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 06-cr-016-CKK |
| ) | |
| Robert J. Stein, ) | |
| ) | **UNDER SEAL** |
| Defendant. ) | |
| ) | |

FILED
MAR 11 2008
Clerk, U.S. District and
Bankruptcy Courts

FILED
DEC 0 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**GOVERNMENT'S SENTENCING STATEMENT AND DEPARTURE MOTION BASED UPON SUBSTANTIAL ASSISTANCE TO AUTHORITIES UNDER U.S.S.G. § 5K1.1**

COMES NOW the United States of America, by and through its undersigned counsel, and, hereby files the instant memorandum in aid of sentencing for the above-captioned matter.

The Government has reviewed the Pre-sentence Investigation Report prepared by the United States Probation Office and has found no factual inaccuracies contained therein. With respect to the differences between the parties' agreed upon sentencing guidelines and those contained in the Probation Office's report, the Government urges the Court to follow the guidelines delineated in the plea agreement.

I.   **Background**

On January 23, 2006, Robert J. Stein, 50, of Hope Mills, North Carolina, pleaded guilty to a five-count information in the District of Columbia, charging him with conspiracy (18 USC § 371), bribery (18 U.S.C. § 201), money laundering conspiracy (18 U.S.C. § 1956(h)), being a felon in possession of a firearm (18 U.S.C. §§ 922(g)(1) and 924(a)(2)), and possession of a machine

RECEIVED
DEC 0 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



gun (18 U.S.C. § 922(o)). Stein is scheduled to be sentenced by this Court on January 12, 2007. Stein had been incarcerated at the DC Jail since his arrest on November 13, 2005. He was recently moved to a Virginia county facility where he will remain until he is transferred to the Bureau of Prisons to serve the federal sentence imposed by this Court. Two of Stein's co-conspirators, Philip Bloom and Lieutenant Colonel Bruce Hopfengardner, have previously pleaded guilty and are due to be sentenced by this Court in early 2007 following Stein's sentencing.

In February 2007 or sooner, the Government expects to indict Stein's remaining co-conspirators, Lieutenant Colonels Debra Harrison and Michael Wheeler, Colonel Curtis Whiteford, William Driver, and Van DeZwarte in three separate indictments in the District of New Jersey, the Eastern District of Wisconsin, and the Western District of Wisconsin. In the event of a trial in any of these cases, the government anticipates calling Stein as a witness.

II. **Acceptance of Responsibility**

Consistent with the terms of the Defendant's plea agreement, the Government hereby moves the Court for a 3-level reduction in the Defendant's applicable guideline range pursuant to U.S.S.G. § 3E1.1(a) and (b), yielding, under the terms of the plea agreement, a recommended net offense level of 33. Stein was

previously convicted of credit card fraud in 1995 and served 8 months imprisonment. Accordingly, under the terms of the plea agreement, defendant Stein is in criminal history II, yielding a guideline range of 151 to 188 months imprisonment.

The Probation Office has recommended a net offense level of 42 and a guideline range of 360 months to life imprisonment.

III. **Guidelines Calculations**

There are significant guidelines calculations disputes between the parties' agreed upon guidelines calculations memorialized in the plea agreement and the calculations recommended by the Probation Office.

    A.    *Conspiracy, Bribery and Money Laundering Offenses Guidelines Calculations*

In the Plea Agreement, the parties agreed that the appropriate Sentencing Guidelines for the conspiracy, bribery and money laundering offenses (Counts One, Two, and Three) are U.S.S.G., §§ 2C1.1 and 2B1.1 (2005 Edition) and that the base offense level is 14 under Section 2C1.1(a)(1). The parties agreed to the following specific offense level increases: a 2-point level increase because the conduct involved more than one bribe or extortion under 2C1.1(b)(1); a 16-level increase is appropriate under Sections 2C1.1(b)(2) and 2B1.1(b)(1)(I) because the amount of loss attributable to the Defendant exceeded $1,000,000 but was less than $2,500,000; and a 4-point increase

3

because the offense involved a high-level decision-making or sensitive position, yielding a gross offense level of 36.

The Probation Office also applied a role in the offense enhancement of 4 levels, yielding a gross offense level of 40. Consistent with the terms of the plea agreement, the Government does not take a position on the application of this enhancement.

Accordingly, the Government urges the Court to follow the Parties' agreed-upon calculations for the conspiracy, bribery and money laundering offenses and find that defendant Stein has a gross offense level of 36.

      B.    <u>*Firearms Offenses - Guidelines Calculations*</u>

With respect to the firearms offenses, the parties agreed that the appropriate Sentencing Guideline for the felon in possession and possession of a machine gun counts (Counts Four and Five) is 2K2.1(a)(4)(B) and that the base offense level is 20. The parties agreed to the following specific offense level increases: a 6 point enhancement because the offense involved more than 25 but less than 99 firearms under 2K2.1(b)(1)(c), a 2 point enhancement because the offense involved a destructive device other than a portable rocket or missile under 2K2.1(b)(3)(B), and a 2 point enhancement because the firearms were stolen under 2K2.1(b)(4), yielding a gross offense level of 30.

Contrary to the parties' agreement, the Probation Office found that the destructive device was a portable rocket or missile and applied a 15 point enhancement rather than the parties' agreed-upon 2 points under 2K2.1(b)(3)(A), yielding a gross offense level of 43.

The Probation Office also applied a 2-point multiple count adjustment increase to the greater offense level of 43 under 3D1.4, yielding a gross offense level of 45, which exceeds the Sentencing Guidelines sentencing table.  The parties did not apply this multiple count adjustment.  Consistent with the terms of the plea agreement, the Government does not take a position on whether it should be applied and urges the Court to follow the Parties' agreed upon calculations for the firearms offenses and find that Stein has a gross offense level of 30.

    C.    <u>Departure Motion Based Upon Stein's Substantial Assistance</u>

The Government submits that Stein's assistance to law enforcement and in particular his post-arrest cooperation have substantially benefitted the prosecution of Bloom and other co-conspirators in this and other unrelated cases.  Accordingly, the government moves for a downward departure under U.S.S.G. § 5K1.1 based upon Stein's substantial cooperation in this case.

First, as indicated above, Stein's immediate cooperation led to the recovery of weapons and other illegally-obtained assets. Bloom, Stein's co-conspirator, was arrested shortly before Stein

and, unbeknownst to either of them, each defendant provided information about the other.  Stein also provided extensive information about the bid-rigging and money laundering schemes.  They both continued to provide information to the Government that corroborated the Government's evidence against them and resulted in their guilty pleas.

Second, information provided by Stein was utilized in developing probable cause to arrest two additional co-conspirators, Harrison and Wheeler.  Stein provided information that corroborated government evidence which showed that Harrison received a Cadillac Escalade financed by Bloom.  This information, coupled with Stein's admission that he gave Harrison two pistols, was used in a warrant to search Harrison's home, resulting in the seizure of the vehicle and pistols.  In addition, while agents were searching Harrison's residence in New Jersey, Stein was speaking with investigators in Washington, D.C.  During Harrison's consensual post-arrest interview, agents were able to cross-reference Harrison's statements with evidence and Stein's statements in order to assess Harrison's veracity.  Furthermore, Stein provided information about other items he had given to Harrison, such as federal express shipments of prescription drugs and gold kougerands.  Stein's assistance further provided agents with the ability to question Wheeler about his participation in the conspiracy, and led to the

consensual search of Wheeler's home and seizure of six more stolen weapons.

Third, Stein's consent, used to search his computers, provided the government with thousands of email communications and other documents that provide the government with still more corroboration in the cases against Harrison and Wheeler, and the pending prosecution of Whiteford.

Fourth, and finally, while Stein did initially mitigate Harrison's conduct and the weapons-related aspects of the conspiracy, he has since provided credible information on both topics. Additionally, Stein's assistance in explaining the bid-rigging and money laundering schemes provided valuable first-hand insight into this highly complex international bribery, fraud and money laundering conspiracy that directly affected the United States' efforts to reconstruct the infrastructure of Iraq, including schools, libraries, democracy centers, and women's learning centers.

Since the time of his plea, Stein has been and continues to work with prosecutors and FBI, SIGIR, IRS, and ICE agents during numerous debriefings to build a case against Bloom, Harrison, Wheeler, Whiteford and others. Moreover, as stated above, Stein has also agreed to and is expected to testify before the grand jury and at trial against Harrison, Wheeler, and Whiteford in their trial in New Jersey and Wheeler's separate trial in

Wisconsin. Based on the foregoing, we believe Stein's cooperation to date satisfies the "substantial assistance" standard set forth in U.S.S.G. Section 5K1.1.

IV. **Applicable Law**

In the wake of United States v. Booker, federal sentencing is now governed by 18 U.S.C. § 3553(a), which states that district courts "shall consider" several sentencing factors. 543 U.S. 220 (2005). In addition, the Supreme Court in Booker made the Guidelines sentencing range a required consideration, see § 3553(a)(4); but Booker "permits the court to tailor the sentence in light of other statutory concerns as well." Booker, 543 U.S. at 220.

V. **The Sentencing Factors Support a Sentence in the Government's Proposed Guidelines Range**

The § 3553(a) factors firmly support a sentence within the Government's recommended Guidelines range. The first factor is the nature and circumstances of the offense and the history and characteristics of the defendant. The offenses of conviction were flagrant violations of criminal law committed by a public official who was imbued with the public trust during a time of war. The defendant's participation was critical to the success of the conspiracy; indeed, without his assistance, the financial crimes would not have been possible.

The second factor is the history and characteristics of the defendant. The fact that the defendant, a repeat offender,

8

perpetrated his crimes while acting as a public official is, in the government's view, an aggravating factor in this case. The defendant had previously been given positions of public trust and used those positions for his own private gain. Here, he once again took an oath to uphold the law, and he repeatedly broke that oath.

The third factor is the need to reflect the seriousness of the offense and to promote respect for the law. Defendant Stein and his co-conspirators undermined the effectiveness of the United States' mission to rebuild the Republic of Iraq by stealing U.S. appropriated and Iraqi funds and goods meant for the reconstruction of Iraq. In addition to the bribery, money laundering and theft offenses, defendant Stein also stole automatic and explosive weapons and handed them out to his co-coconspirators. These highly dangerous weapons were transported across the United States and housed in unsecured storage facilities, such as defendant Stein's garage and Wheeler's bedroom. The seriousness of such offenses is readily apparent from the charges themselves.

The public expects government employees and elected officials to conduct themselves, at a minimum, in accordance with the criminal laws. This defendant plainly ran afoul of several federal criminal laws and used his public position for private

gain.  This factor weighs heavily against deviation from the sentencing guidelines range advanced by the Government.

The fourth factor is the need to deter criminal conduct. The public has a compelling interest in deterring crimes committed by public officials, as these persons, because of their special skills and access, are uniquely positioned to do harm to the public.  Public officials who commit serious crimes should not be afforded leniency by courts absent truly compelling circumstances, because the goal of deterrence will be handicapped if the public perceives that public officials who commit crimes are afforded more leniency than an ordinary member of the public who had never enjoyed the prestige of public office.

The fifth and sixth factors - the need to protect the public and to provide the defendant with rehabilitative or other training or medical care have little or no relevance here.

Finally, the seventh factor is the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar offenses.  Defendant Stein is the first defendant to be sentenced for the crimes delineated in the Information.

### VI.  Sentencing Recommendation

Taking into account all of the sentencing factors of Section 3553 and the Defendant's assistance to the Government, the Government hereby moves the Court for a departure from the

recommended sentencing guidelines under 5k1.1 and depart **3** levels downward, yielding a final offense level of **30,** Criminal History II, which keeps defendant Stein in **Zone D** and yields a guideline range of 108-135 months.  Although Stein has cooperated with the Government's investigation, the Government is not unmindful of the significance of the multiple felonies committed by the Defendant.  Moreover, these crimes were committed after the Defendant had previously been convicted of a fraud crime and served 8 months in prison.  Balancing all of these factors, the Government hereby asks the Court to sentence the Defendant to a term of **120 months imprisonment**.  Given the substantial forfeiture and restitution claims pending against the Defendant and his ability to pay, the Government does not ask the Court to impose a fine.

DATED: December 5, 2006

>Respectfully Submitted,
>
>EDWARD C. NUCCI
>Chief, Public Integrity Section
>
>JAMES A. CROWELL IV
>ANN C. BRICKLEY
>Trial Attorneys
>Public Integrity Section
>
>PATRICK MURPHY
>Trial Attorney
>Asset Forfeiture and Money
>     Laundering Section
>
>
>U.S. Department of Justice
>Criminal Division
>1400 New York Ave., NW
>Suite 12100
>Washington, DC 20005
>(202) 514-1412
>james.crowell@usdoj.gov
>Ann.brickley@usdoj.gov
>Patrick.murphy@usdoj.gov